IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY NEAL, JR., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )  No. 3:21-cv-00820-GCS |
| | ) |
| LOUIS DREYFUS COMPANY SERVICES LLC, | ) |
| | ) |
|       Defendant. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, Jerry Neal, Jr. ("Plaintiff" or "Neal") has brought this action against his former employer, Louis Dreyfus Company Services LLC ("LDC" or the "Company") alleging retaliatory discharge in violation of the Illinois Workers' Compensation Act, 820 ILCS 305/4(h). Plaintiff was terminated by the Company after a medical leave of absence that extended beyond six months. The underlying facts supporting Plaintiff's termination are undisputed. Plaintiff was discharged pursuant to Company policy and his employment was subject to termination after 26 weeks of disability leave. There is no probative evidence that the Company retaliated against Plaintiff for pursing workers' compensation benefits. Accordingly, Plaintiff's retaliation claim should be dismissed as a matter of law.

**STATEMENT OF MATERIAL FACTS**

**I.  BACKGROUND**

1.  LDC operates a grain elevator in Cahokia, Illinois, where Plaintiff was employed. (Ex. 1, Neal Depo. 13:5-15:7).

2. Neal was hired as an Operator at the Cahokia facility in April 2015 and was responsible for assisting with loading and unloading grain transported by railcars and barges. (*Id.* at 12:17-24; 13:22-15:16).

3. Neal was separated from his employment with the Company effective June 19, 2017, when he was unable to return to work after a six-month medical leave of absence. (Ex. 2, Khatib Decl. ¶ 4).

II. **MEDICAL LEAVE OF ABSENCE**

4. In November 2016, Neal sustained an injury to his back. (Ex. 1, Neal Depo. 43:22-44:21).

5. After sustaining his back injury in late 2016, Neal applied for short-term disability (STD) benefits through the Company. (*Id.* at 54:3-23) (Ex. 5).

6. On the January 3, 2017 application for STD benefits, Neal's doctor referenced his back injury and indicated that it was "unknown" whether the injury arose from Neal's employment. (Ex. 5). Neal's doctor further imposed medical restrictions preventing Neal from lifting, pushing or carrying over 10 pounds. (*Id.*).

7. Neal acknowledges that the job of Operator is physically demanding and requires employees to engage in heavy lifting in excess of 75 pounds and engage in other physical activities that Neal was unable to perform due to his injury and restrictions. (Ex. 1, Neal Depo. 17:24-19:9; 57:3-16).

8. Neal commenced a medical leave as of December 20, 2016, and remained subject to restrictions preventing him from working as an Operator through the end of his employment in June 2017. (*Id.* at 29:22-30:12; 59:7-60:2).

9. During his leave of absence, Neal filed claims for STD and long-term disability (LTD) benefits and also pursued a claim for workers' compensation benefits with the Company's insurance carrier. (Ex. 2, Khatib Decl. ¶ 5).

10. Neal received STD benefit payments while pursuing his claim for workers' compensation benefits. (Ex. 1, Neal Depo. 73:19-74:9).[1] STD benefits may be payable through the Company while a workers' compensation claim is pending. (Ex. 2, Khatib Decl. ¶ 7). This allows the employee to receive income during the time a determination is being made regarding the employee's workers' compensation claim. (*Id.*).

11. Pursuant to the Company's disability leave policy, employees are subject to termination and their employment benefits will end after 26 weeks (six months) of disability leave. (*Id.*) (Ex. 3). The Company's policy that allows only 26 weeks of disability leave has been in place for decades and applies to all employees, regardless of whether they are injured on the job. (Ex. 2, Khatib Decl. ¶ 5).

12. Approximately four months after commencing his leave of absence in December 2016, Neal received a written notice from the Company dated May 4, 2017, which provided as follows:

> We are writing to inform you that, pursuant to Company policy, your employment and all Company-provided benefits will end on June 19, 2017, unless you are able to return to work. If you are unable to return to work, you may be eligible for long-term disability (LTD) benefits…
>
> If you believe you are disabled under the Americans with Disabilities Act or other applicable laws, and would like to discuss potential accommodations that may allow you to return to work and perform the essential functions of your job or otherwise continue your employment, please contact Amber Randall… on or before June 19, 2017.

---

[1] Neal pursued two workers compensation claims at LDC. (*Id.* at 8:1-3). Both of these claims, including the back injury claim, were processed and paid by the Company. (*Id.* at 37:22-38:21; 40:12-41:8).

(Ex. 4) (Ex. 1, Neal Depo. 60:9-23).

13. After receiving this letter, Neal understood that his employment and employee benefits would end on June 19, 2017, unless he was able to return to work. (Ex. 1, Neal Depo. 62:4-9). He also understood that he could apply for LTD benefits if he was unable to return to work. (*Id.* at 62:10-16).

14. On May 11, 2017, Neal visited his doctor and produced a medical note indicating there was no change regarding his medical status or work restrictions. (*Id.* at 65:4-66:2).

15. On May 23, 2017, Neal's workers' compensation attorney also forwarded a letter to the Company's legal counsel in the workers' compensation case advising that his client wished "to return to work once the effects of his injury have remitted." (*Id.* at 69:14-71:17). Neal fully acknowledges that his medical status and restrictions had not changed at the time this letter was sent nor did the letter indicate that he would be able to return to work as of June 19, 2017. (*Id.* at 70:18-71:2; 72:23-73:5).

16. During the timeframe of May 4, 2017 through June 19, 2017, no medical information was provided to the Company indicating any change in Neal's medical status or advising that he would be in a position to return to work as of June 19, 2017. (*Id.* at 80:20-81:12).

17. Neal acknowledges that as of June 19, 2017, he was not physically able to return to work due to his back pain and the fact that he was continuing to receive treatment. (*Id.* at 77:8-14; 81:13-20).

18. In early June 2017, Neal came to the facility requesting assistance to fill out paperwork to receive LTD benefits and an application for LTD benefits was submitted on his behalf. (Ex. 2, Khatib Decl. ¶ 9) (Ex. 6).

4

19. Neal's claim for LTD benefits was later approved and Neal received LTD benefits for the timeframe of June 18, 2017 through the end of August 2017 after the LTD plan administrator determined that Neal was disabled and unable to perform the duties of any gainful occupation during that timeframe. (Ex. 2, Khatib Decl. ¶ 9) (Ex. 7) (Ex. 1, Neal Depo. 29:7-31:20).

### III. EMPLOYMENT TERMINATION

20. Neal's termination was processed by the Company on June 26, 2017, noting that Neal was "unable to return from leave" and his termination was effective as of June 19, 2017. (Ex. 2, Khatib Decl. ¶ 11) (Ex. 8). The termination was processed by Dave Stafford, Sr. Regional Human Resources Manager. (Exs. 8 and 9). Prior to processing the termination, Stafford confirmed that Neal had not contacted anyone at the Cahokia facility about returning to work nor did he request accommodations that would allow him to return to work. (Ex. 2, Khatib Decl. ¶ 11) (Ex. 8).

21. On June 28, 2017, a termination notice was issued to Neal advising that his employment had been terminated effective June 19, 2017, after "a leave of absence with the Company that extended beyond six months." (Ex. 9). The termination notice referenced that Neal failed to contact the Company or see his doctor prior to June 19, 2017. (Ex. 9). The notice also referenced that Neal had gone to his doctor on June 22, 2017, and did not report to work or contact the Company regarding this doctor's visit until June 26, 2017. (Ex. 9). Stafford believed these facts to be true at the time he issued the termination notice on June 28, 2017. (Ex. 10, Stafford Depo. 39:15-42:5).

22. The Company's 26-week policy has been consistently enforced by the Company and Neal is not aware of any other employee who was not terminated after being off work for 26 weeks. (Ex. 2, Khatib Decl. ¶ 5) (Ex. 1, Neal Depo. 95:7-10).

## STANDARD OF REVIEW

"Summary judgment is properly regarded, not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To withstand a motion for summary judgment, the non-moving party must substantiate the allegations with more than speculation. "Speculation is insufficient to withstand summary judgment; the nonmoving party 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). According to the U.S. Supreme Court:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

trial.'" *Anderson*, 477 U.S. at 250. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

## ARGUMENT

Neal's sole claim in this action is that he was discharged in retaliation for pursuing a workers' compensation claim. Under the Illinois Workers' Compensation Act, it is unlawful for "any employer individually or through any insurance company or service or adjustment company, to discharge or threaten to discharge an employee because of the exercise of his or her rights or remedies granted him or her by [the Workers' Compensation] Act." *Matros v. Commonwealth Edison Co.*, 136 N.E. 3d 83, 106 (Ill. App. Ct. 2019) (citing 820 Ill. Comp. Stat. Ann. 305/4(h)). Accordingly, "section 4(h) plainly prohibits a retaliatory discharge for the exercise of Workers' Compensation rights." *Id.* (quoting *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 119 (2008)). Neal's retaliatory discharge claim fails because Neal cannot show a causal link between his workers' compensation claim and his termination.

**I.    Neal's Retaliatory Discharge Claim Fails as a Matter of Law Because There is No Evidence That His Discharge Was Causally Related to His Workers' Compensation Claim.**

Neal's retaliatory discharge claim fails as a matter of law. In order to establish a claim for retaliatory discharge predicated upon the exercise of workers' compensation rights, Neal must prove that: (1) he was an employee before the injury; (2) he exercised a right granted by the Workers' Compensation Act; and (3) he was discharged and that the discharge was causally related to his filing of a claim under the Workers' Compensation Act. *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 335-36 (1998). There is no dispute that Neal satisfies the first two elements of his claim. However, Neal cannot prove the third element of causation as his

7

discharge was not causally related to his workers' compensation claim and Neal cannot provide any facts that give rise to an inference of retaliation.

With respect to the causation element of a retaliatory discharge claim, Illinois law does not use the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and commonly applied in federal employment discrimination and retaliation cases. *Matros v. Commonwealth Edison Co.*, 136 N.E. 3d at 107. Rather, the focus of the claim is the causation element, which the plaintiff bears the burden of establishing. *Id.* To that end, Illinois courts have "repeatedly emphasized that '[w]hen deciding the element of causation, the ultimate issue is the employer's motive in discharging the employee.'" *Id.* (quoting *Michael v. Precision Alliance Group, LLC*, 21 N.E. 3d 1183, 1188 (Ill. 2014)).

Accordingly, in a retaliatory discharge action under Illinois law, "an employer is not required to come forward with an explanation for the employee's discharge." *Id.* (citing *Michael*, 21 N.E. at 1188). However, if the employer chooses to offer its reasoning for discharging the plaintiff alleging retaliatory discharge, "the plaintiff must establish that the employer's explanation is pretextual." *Basil v. CC Services, Inc.*, 116 F. Supp. 3d 880, 893 (N.D. Ill. 2015) (citing *Casanova v. Am. Airlines, Inc.*, 616 F.3d 695, 698 (7th Cir. 2010)). Here, Neal cannot prove that the Company's explanation for his termination from employment is pretextual.

Neal was terminated because after 26 weeks of leave he was unable to return to work with or without reasonable accommodations, consistent with the Company's policies. The Company's policies provide that an employee may be subject to termination if the employee is unable to return to work after 26 weeks of disability leave. (Ex. 2, Khatib Decl. ¶ 5). This policy applies to all employees regardless of whether their leave of absence arises from a work-

related injury.  (*Id.*).  Neal's termination is consistent with the Company's policy and his workers' compensation claim does not shield Neal from the application of this policy.  Indeed, "[t]he filing of a workers' compensation claim does not insulate an employee from being disciplined for failing to meet his obligation to obey personnel rules, including those that pertain to absenteeism."  *Finnerty v. Personnel Bd. of City of Chicago*, 707 N.E.2d 600, 606 (App. Ct. Ill. 1999).

Moreover, "[i]t is well settled in Illinois that an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury."  *Finnerty*, 707 N.E.2d at 605.  *See also Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992) (finding "Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position" and "an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury.").  Accordingly, even if Neal's 26-week absence was due to a work-related injury, it does not prevent his termination due to his absences consistent with the Company's policies.  The Company's 26-week leave policy has been in place for decades and has been consistently followed by the Company.  (Ex. 2, Khatib Decl. ¶ 5).

The evidence in this matter further does not show that the Company's explanation for Neal's termination is pretextual.  The Company informed Neal of its 26-week policy well over a month prior to the end of his 26-week leave, advising him that if he was unable to return to work, his employment and Company benefits would end.  (Ex. 3).  In that notice, the Company also informed Neal that if he was unable to return to work, he may be eligible for LTD benefits.  (*Id.*).  Shortly thereafter, Neal applied for LTD benefits.  Neal's LTD application was approved and he received benefits from June 18 through August 2017 (after his separation) based on a

determination that he was disabled and unable to perform the duties of any gainful occupation during this timeframe. (Ex. 7) (Ex. 1, Neal Depo. 29:7-31:20). It is uncontroverted that as of June 19, 2017, Neal was not physically able to return to work. (Ex. 1, Neal Depo. 77:8-14; 81:13-16).

Accordingly, Neal's employment was terminated consistent with the Company's 26-week policy. As this policy applies to all employees regardless of whether their leave of absence arises from a work-related injury, Neal would have been terminated regardless of whether or not he claimed workers' compensation benefits and his termination is not causally related to any such workers' compensation claim. Furthermore, there is no evidence that the Company applies this policy selectively to employees seeking workers' compensation benefits. Indeed, Neal cannot point to any other employee who was not terminated after being off work for 26 weeks. (Ex. 1, Neal Depo. 95:7-10).

While Neal's workers' compensation attorney wrote a letter to the Company's legal counsel for Neal's workers' compensation claim indicating that Neal "does not plan on abandoning his position and wishes to return to work once the effects of this work injury have remitted," the letter did not provide any indication of when Neal may return to work. It is undisputed that Neal could not return to work after his 26-week leave of absence and that he applied for LTD benefits prior to his termination. No medical information was provided to the Company indicating any change to Neal's medical status or that he may return to work as of June 19, 2017. (Ex. 1, Neal Depo. 80:20-81:12).

Neal's termination letter also referenced Neal's failure to see a doctor prior to June 19, 2017, as well as his failure to report to work for three consecutive work days after seeing a doctor on June 22, 2017. (Ex. 9). Even if the Company was mistaken regarding these

underlying facts, a mistake does not equate to evidence of pretext. As recognized by the Seventh Circuit, "[a] mistake differs from pretext" and as long as an employer's belief in its reason for termination is sincere, a plaintiff cannot establish causation even if the employer was incorrect in its reason. *Casanova v. American Airlines, Inc.*, 616 F.3d 695, 698 (7th Cir. 2010). At the time of Neal's termination, the Company believed that he had failed to abide with the Company's Attendance Policy by not coming into work after submitting a revised doctor's note. Even if this reasoning was a mistake, it is not evidence of pretext. It remains undisputed that Neal could not return to work on June 19, 2017, and his termination is consistent with the Company's 26-week policy that applies to all leaves of absences, regardless of whether the leave is the result of a work-related injury.

In order to prevail on his claim, Neal has the burden of establishing that his termination was causally connected to this claim for workers' compensation benefits. Neal cannot satisfy such burden. As a result, Neal's retaliatory discharge claim fails as a matter of law.

**II.    There Is No Evidence To Support Punitive Damages As Neal Cannot Prove Retaliatory Discharge.**

Neal also claims punitive damages relating to his retaliatory discharge claim. As explained above, because Neal cannot prove his discharge was causally related to his workers' compensation claim, he is not entitled to any damages on his claim, much less punitive damages. Furthermore, there is no evidence that Neal's discharge was the result of willful or wanton action on the part of the Company. Punitive damages are only appropriate in a retaliatory discharge case when there is evidence that the employer acted willfully, with actual malice, or with such gross negligence as to indicate a wanton disregard for the rights of others. *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978). Additionally, "while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case

justify the imposition of punitive damages is properly one of law." *Kelsay*, 384 N.E.2d at 359. Here, as explained above, the Company terminated Neal's employment consistent with its 26-week disability leave policy after it had provided him with 26 weeks of leave. This policy applies to all employees, regardless of the reason for their need for leave. There certainly is no evidence that the Company acted with actual malice and accordingly, there is no evidence to support punitive damages in this matter.

## CONCLUSION

For the reasons stated above, Neal's claims against the Company should be dismissed in their entirety as there is no issue of material fact and the Company is entitled to summary judgment as a matter of law.

Dated this 17th day of February 2023.

                                          LOUIS DREYFUS COMPANY SERVICES LLC, Defendant

By:     /s/ Aaron A. Clark
Aaron A. Clark, #20045
Ruth A. Horvatich, #24776
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Phone: 402-341-3070
Fax: 402-341-0216
aclark@mcgrathnorth.com
rhorvatich@mcgrathnorth.com

-and-

Gregg Kinney
Hepler Broom LLC
211 North Broadway, Suite 2700
St. Louis, MO 63102
314-241-6160
Gregg.Kinney@heplerbroom.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 17th day of February 2023, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which provided notice to the following:

Eric J. Carlson
411 St. Louis Street
P.O. Box 527
Edwardsville, IL 62025
ejc@byroncarlson.com

Jeffrey Ezra
850 Vandalia, Suite 310-320
Collinsville, IL 62234
jeff@ezralaw.com

          /s/ Aaron A. Clark
      Aaron A. Clark